**PAULA CANNY, SBN 96339**
**LAW OFFICE OF PAULA CANNY**
840 Hinckley Road, Suite 101
Burlingame, CA  94010
Telephone: (650) 652-7862
Facsimile: (650) 652-7835
Email:  defensedog@aol.com

**ARA JABAGCHOURIAN, SBN 205777**
**LAW OFFICES OF ARA JABAGCHOURIAN, P.C.**
1650 S. Amphlett Boulevard, Suite 216
San Mateo, CA 94402
Telephone:  (650) 437-6840
Facsimile:  (650) 403-0909
Email:  ara@arajlaw.com

**RANDALL KNOX, SBN 113166**
**THE LAW OFFICE OF RANDALL KNOX**
870 Market Street, Suite 820
San Francisco, CA 94102
Telephone:  (415) 765-7500
Facsimile:  (415) 765-7501
Email:  randallknoxlaw@gmail.com

Attorneys for Plaintiffs
CURTIS L. BRIGGS, ROBERT CANNY,
and MATTHEW MURILLO

## UNITED STATE DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS L. BRIGGS, an individual; ROBERT CANNY, an individual; and MATTHEW MURILLO, an individual; <br><br>   Plaintiffs, <br>  vs. <br><br>SAN MATEO COUNTY, a municipal corporation; CARLOS BOLANOS, SHERIFF OF SAN MATEO COUNTY, an individual; FRANK DAL PORTO, CAPTAIN OF THE SAN MATEO COUNTY SHERIFF'S OFFICE, an individual; and DOES 1 through 50, inclusive, <br><br>   Defendants. | **Case No.:** <br><br>**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF** |

## TABLE OF CONTENTS

**Page**

VERIFIED COMPLAINT ................................................................................................ 1

INTRODUCTION ............................................................................................................ 1

JURISDICTION AND VENUE ...................................................................................... 1

THE PARTIES................................................................................................................. 2

PART ONE

     DEFENDANTS SURVEILLANCE OF ATTORNEY-CLIENT
     COMMUNICATIONS ........................................................................................... 3

PART TWO

     STOPPING SMCSO'S IMPLEMENTATION OF THE PATENTED MAILGUARD
LEGAL™ SYSTEM......................................................................................................... 13

DEFENDANTS NEW LEGAL MAIL POLICY VIOLATES PLAINTIFFS FIRST
AMENDMENT RIGHTS ................................................................................................. 16

COUNT 1 - VIOLATION OF FIRST AMENDMENT RIGHTS ...................................... 17

PRAYER FOR RELIEF ................................................................................................... 19

VERIFICATION OF PLAINTIFF CURTIS L. BRIGGS ................................................. 21

VERIFICATION OF PLAINTIFF ROBERT CANNY ..................................................... 22

VERIFICATION OF PLAINTIFF MATTHEW MURILLO............................................. 23

**VERIFIED COMPLAINT**

Attorney Curtis L. Briggs, Attorney Robert Canny, and Attorney Matthew Murillo (hereinafter "Plaintiffs"), hereby file this Verified Complaint against San Mateo County, Carlos Bolanos, the elected Sheriff of San Mateo County and Commander of the San Mateo County Sheriff's Office and Frank Dal Porto, Captain of the San Mateo County Sheriff's Office, and head of the San Mateo County Sheriff's Office Corrections Department, and other yet to be identified personnel of the San Mateo County Sheriff's Office. (hereinafter "Defendants").

**INTRODUCTION**

1.       The Defendants have drastically altered policies and procedures regarding communications within the San Mateo County Jails by inmates with third parties, including attorneys.

2.       The Plaintiffs are bringing this lawsuit because the Defendants' policies and practices infringe on the Plaintiffs' First Amendment Rights by interfering with Plaintiffs' attorney-client communications with incarcerated people in Defendants' jails.

3.       As hereinafter explained the Defendants' policies and practices violate not just the Plaintiffs' First Amendment Rights, but also violate the First Amendment Rights of all attorneys attempting to communicate with people incarcerated in Defendants' jails.

**JURISDICTION AND VENUE**

4.       This action to vindicate the First Amendment Rights of the Plaintiffs, and other attorneys and their current and prospective clients' and is brought under 42 USC § 1983.  This Court has jurisdiction over this action under 28 USC § 1331.

5.       Venue is proper in the Northern District of California pursuant to 28 USC § 1391(b) in that Defendants and Plaintiffs are subject to personal jurisdiction within the Northern District of California and the events that give rise to this action occurred within the Northern District of California.

**THE PARTIES**

6.     Plaintiff Curtis L. Briggs, an individual, is an attorney at law, duly licensed to practice in the State of California.  His State Bar Number is 284190.  He represents clients housed in the Defendants' jails.

7.     Plaintiff Robert Canny, an individual, is an attorney at law, duly licensed to practice law in the State of California.  His State Bar Number is 251190.  He represents clients housed in the Defendants' jails.

8.     Plaintiff Matthew Murillo, an individual, is an attorney at law, duly licensed to practice law in the State of California.  His State Bar Number is 316781.  He represents clients housed in the Defendants' jails.

9.     The Attorney Plaintiffs bring this action on behalf of themselves and/or attorneys who have and who may in the future have clients incarcerated in the Defendants' Jails.

10.     The Attorney Plaintiffs currently represent individuals incarcerated in each of the Defendants' Jails, i.e., the Maguire Jail and the Maple Street Jail.

11.     Defendant San Mateo County (hereinafter "COUNTY") is a municipal corporation duly organized and existing under the laws of the State of California.  Under its authority the COUNTY operates the San Mateo County Sheriff's Office.

12.     Defendant, Carlos Bolanos, is the elected Sheriff of San Mateo County.  The San Mateo County Sheriff's Office performs a law enforcement function for San Mateo County and a custodial function, i.e., operates the San Mateo County's Jails, i.e., the Maguire Jail, and the Maple Street Jail.

13.     The San Mateo County Sheriff's Office (hereinafter "SMCSO") is headed by elected Sheriff Carlos Bolanos.

14.     Upon information and belief Sheriff Bolanos assigned SMCSO Captain Frank Dal Porto to head the SMCSO Jail operations.  Captain Dal Porto commands the SMCSO's two jails, the Maguire Jail, and the Maple Street Jail.

15.     Defendant Does 1-50 (hereinafter "DOE Defendants") are individuals, municipal entities, and other legally defined entities.  Plaintiffs are informed and believe and thereon allege

that each of said fictitiously named DOE Defendants is responsible in some manner for the acts, omissions and damages alleged herein.  Plaintiffs are unaware of the names and capacities of the DOE Defendants, and therefore, sues these DOE Defendants under such fictitious names.

16.     Plaintiffs are informed and believe and hereon allege that each of the Defendants was at all times an agent, a servant, an employee, a partner, joint venture, co-conspirator and/or alter ego of the remaining Defendants and in so doing the things herein alleged, was acting within the course and scope of that employment.  Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants and ratified and authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged.  At all material times each Defendant was jointly engaged in the activities herein alleged and was and is an integral participant in the conduct described herein resulting in the violations of Plaintiffs' Constitutional rights.

17.     Plaintiffs are furthermore informed and believe and thereon allege that each of said fictitiously named DOE Defendants was the agent, servant, and employee of Defendants and was within the course and scope of his or her agency and employment and with the knowledge, ratification, and consent of each respective principal.  Plaintiffs will seek leave to amend this Complaint when their true names and capacities have been ascertained.

## PART ONE

## DEFENDANTS' SURVEILLANCE OF
## ATTORNEY-CLIENT COMMUNICATIONS

18.     Defendants operate two jails.  The older of the two jails is called the Maguire Facility.  The newer jail opened in 2016 is called the Maple Street Jail.  At the behest of Defendants both jails now utilize the "Smart Communications" electronic communications systems.

19.     The Maguire Jail holds a maximum of 1,000 inmates.  The Maple Street Jail holds a maximum of 850 inmates.  Each of the jails house both sentenced prisoners and pre-trial detainees.  Only the Maple Street Jail houses women.

20.     Each of the Plaintiffs communicate with their respective clients incarcerated in the Defendants' jails by paper mail mailed to their inmate clients by United States Postal Service mail.

21.     Each of the Plaintiffs communicate with their respective clients incarcerated in the Defendants' jails by going to the jails and personally meeting with their clients. The meetings are held in rooms that are private and not monitored such that Plaintiffs' First Amendment Rights and the Sixth Amendment Rights of their clients are protected.

22.     Each of the Plaintiffs communicate with their respective clients incarcerated in the SMCSO jails by telephone. The Defendants permit attorneys to register their telephone numbers with the phone carrier to block Defendants' personnel from monitoring attorney-client phone calls such that Plaintiffs' First Amendment Rights and the Sixth Amendment Right of their clients are protected.

23.     Each of the Plaintiffs communicate with their clients incarcerated in Defendants' jails by mailing letters (paper mail) by United States Postal Service to their clients and prospective incarcerated in the Defendants' jails.

24.     As per existing law the mailed legal letters are supposed to be opened in front of the inmate recipient by Defendants' personnel, checked for contraband and then provided to the recipient incarcerated client and/or prospective client.

25.     Defendants do not follow this procedure. Defendants' personnel often times open legal mail outside of the presence of the inmate recipient. Other times Defendants have sent attorney-client paper legal mail to Smart Communications in Seminole, Florida. Smart Communications then scans the letter, and the letter is then transmitted electronically to the inmate by the Smart Communications SmartTablet™, as hereinafter explained.

26.     Since the advent of the pandemic in March 2020 the Defendants operations of the jails were impacted. Defendants altered attorney access to inmates. Attorneys' physical access to incarcerated clients was limited by the Defendants because of the COVID concerns.

27.     Plaintiffs access to their clients was impacted and diminished by the Defendants' COVID policies.

28.     In September of 2021, the San Mateo County Board of Supervisors entered into a written agreement with a privately held Florida Corporation called Smart Communications Holding, Inc. (hereinafter "Smart Communications") to provide inmate communications services for the Defendants' jails.  The Defendants have implemented the Agreement and installed Smart Communications' communication devices called SmartTablet™ in the Defendants' jails.

29.     The Agreement (hereinafter "**Agreement**") between Smart Communications and Defendant San Mateo County and implemented by the Defendant SMCSO will be more fully described hereinafter.

30.     The **Agreement** is attached hereto and marked as Exhibit 1.  The **Agreement** includes 9 pages of contract terms and the signature page, an Exhibit A which is 7 pages long and identifies the **Agreement's** services, a one page Exhibit B which sets the rates and fees, and a final "Attachment 1" entitled "Assurance of Compliance with Section 504 of the Rehabilitation Act of 1973, as amended."

31.     Under the **Agreement** "Smart Communications" is to provide communications services for inmates of the Defendants' jails through the use of among other things, electronic messaging services, video visitation, and digitized transmitted electronic mail from scanned paper mail by use of the Smart Communication SmartTablets™.

32.     Exhibit A to the **Agreement** states that "Smart Communications" will provide wireless correctional grade tablets to the SMCSO for use by the inmates in the San Mateo County Jails.  The device is called the "SmartTablet™".  The "SmartTablet™" allows an inmate user to access the "Smart Network."  The "Smart Network" is a closed network.  The "Smart Network" allows for access to digital electronic messages (they are like emails) scanned/digitized paper mail, grievance forms, medical requests, and access to a "Smart Communications" network law library.  Exhibit A to the **Agreement** contains several subsections.

33.     The focus of this lawsuit relates to two subsections of Exhibit A to the **Agreement**, i.e., Subsection C of Exhibit A to the **Agreement** entitled "Smartinmate™ Electronic Messaging", and Subsection E of Exhibit A to the **Agreement** entitled "Patented MailGuard Legal™ System."

34.     Regarding Subsection C "Smartinmate™ Electronic Messaging" this lawsuit seeks an Order requiring the Defendants to implement the attorney-client blocking feature on the Smartinmate™ Electronic Messaging System or to implement adequate warnings to attorney users that the electronic messages can be read and are read by virtually any one of the Defendants' correctional officers, deputy sheriffs and other employees of the Defendants and by investigators of the San Mateo County District Attorney's Office as well as other members of law enforcement.  Currently there is no meaningful adequate warning.  Defendants do not advise the attorney that Defendants and law enforcement also download the messages, copy the messages, and forward the messages to other law enforcement agencies and to the San Mateo County District Attorney's Office.  In addition, the Defendants do not warn that a user does not have the ability to delete an electronic Smart mail message.

35.     Regarding Subsection E, the "Patented MailGuard Legal™ System" this lawsuit seeks an Order blocking the Defendants from scanning paper attorney client communications and transmitting the communications electronically to the inmate clients.

36.     Plaintiffs have each received Smart Mail electronic messages "emails" from clients incarcerated in the Defendants' jails.  The emails originated from Smart Communications SmartTablets™ by inmates incarcerated in Defendants' jails.

37.     The electronic message appears to be an email.  Each Plaintiff responded to the Smart Mail electronic message email by signing up for the Smart Mail system.

38.     The Defendants' Smart Mail system seemingly appears private.  In reality it is not private.  The electronic message emails are surveilled, read, downloaded, forwarded, and retained by Defendants.  The emails are used by law enforcement to further prosecutorial goals by Defendants.

39.     Defendants' Smart Mail electronic messenger system is designed to appear private and convenient.  The Plaintiffs did not know their communications were being surveilled.

40.     None of the Plaintiffs were adequately warned that the seemingly private emails were and are surveilled, copied, downloaded, forwarded, and saved by Defendants for law

enforcement use for perpetuity, as well as "owned" by Smart Communications for their use for perpetuity.

41.     Plaintiffs learned of the extensive surveillance by Defendants and law enforcement agents through discovery in various criminal cases in which they represent incarcerated clients in Defendants' jails by requesting Smart Mail electronic messages of their incarcerated clients.

42.     Plaintiffs learned of the extensive surveillance when their Smart Mail communications were used against their clients in their respective criminal cases by Defendants.

43.     Plaintiffs initiated an investigation into the SMCSO and Smart Jail Mail to learn the extent of their subterfuge and the extent of Defendants surveillance of communications with their clients incarcerated in the Defendants' jails.

44.     The Smart Mail sign-up process does not contain warnings commensurate with the level of law enforcement surveillance.  The sign-up process is either purposefully deceptive or negligently deceptive.  It is nevertheless misleading and deceptive because the system is not private at all, and there are not adequate warnings to attorneys.

45.     Each Plaintiff attorney was "invited" to respond to an email from a client in custody in Defendants' jails.  In order to reply to the email Plaintiffs had to create a Smart Mail account.

46.     To create the account each Plaintiff clicked "Agree" on the Terms of Service icon. The Terms of Service do not appear nor does a Privacy Policy appear.  There is no warning or mention that the electronic message emails are not protected by the attorney-client privilege and are not confidential.

47.     To create a Smart Mail account the Plaintiffs completed the sign-up process by providing their names, addresses, dates of birth, sex, and email addresses.

48.     The Smart Communications logo is a shield.  Each Plaintiff created a username and a password.  Each Plaintiff was under the impression that a secure account had been created.

49.     Smart Mail thereafter processed the information provide by Plaintiffs and sent a link to each Plaintiff activating their account.  Plaintiffs thereafter could and did communicate using the Defendants' Smart jail mail digital electronic email link communication system.

50.     Plaintiffs bring this lawsuit in their own stead and on behalf of all the other attorneys who have registered and used the Smart Mail System operated by the Defendants.

51.     The Defendants' jails have approximately 1,000-1,200 people in custody.  Each and every incarcerated individual whether a pretrial detainee or a sentenced prisoner's primary means of communication is now the Defendants' Smart jail mail Tablet.

52.     Incarcerated people in the Defendants' jails may not receive U.S. Mail except legal mail.  But as will be explained hereinafter the Defendants are implementing the Smart Mail patented legal mail system to electronically digitize attorney-client paper mail and eliminate all paper mail delivered by the U.S. Postal Service to inmates.

53.     Virtually every pretrial detainee in the Defendants' jails is represented by an attorney.  The majority of the attorneys are court appointed to represent the incarcerated pretrial detainee because the person lacks the money to hire an attorney and/or to post bail.

54.     San Mateo County does not have a public defender's office.  San Mateo County has a contract with the San Mateo County Bar Association which operates the Private Defender Program.  The Private Defender Program Administration provides indigent defendants with an attorney from a list of defense attorneys in the Private Defender Program.

55.     Virtually every lawyer who has represented a person and/or who is representing a person who is incarcerated in Defendants' jails has been "invited" to correspond with their inmate client using the Smart Jail Mail electronic messaging system.  This is at least several hundred if not a thousand lawyers.

56.     Hundreds of attorneys like Plaintiffs have registered with Smart Mail providing their names, addresses, dates of birth, sex, and locations to Smart Mail and communicated with their respective clients using the Smart Mail electronic mail system while being unaware that the communications are surveilled by the Defendants and law enforcement and under the terms of use are deemed the property of Smart Mail.

57.    To use the "Smart Communications" Smartinmate™ Electronic Messaging System, inmates use the "SmartTablet™." (*See* Subsection of Exhibit A to the **Agreement**). Inmates are required to click on a terms of use icon and click "approve." The terms of use description for inmates do not include informative monitoring warnings.

58.    To utilize the Smart Mail electronic messaging system the inmate signs-up electronically and becomes a "member" using the "SmartTablet™." There is no charge to sign-up for an electronic messaging account. The inmate then sends an invitation to an outside person to sign-up electronically to also become a "member."

59.    When the outside person receives an invitation from an inmate the outside person must sign-up for an account. The outside person must electronically provide their name, telephone number, email address, physical address, and date of birth. After that information is provided to "Smart Communications" the user then creates a username and password for the "Smart Communications" Smartinmate™ Electronic Messaging System. Upon providing all of that information electronically the person clicks on the agree to the terms of use icon and then becomes a member of the Smartinmate™ Electronic Messaging System. The terms of use description do not include a warning that messages to and from attorneys are monitored.

60.    The sign in process looks very much like signing into an email account. Once the outside member has established a username and password and entered into the Smartinmate™ Electronic Messaging System they can communicate with other members, i.e., inmates incarcerated in the Defendants' jails.

61.    Once the member and the inmate are connected into the Smartinmate™ Electronic Messaging System "members" must buy "credits" from "Smart Communications." A major credit card or debit card must be used to purchase "credits." Message credits are sold in increments of fifty cents with a minimum purchase of 10 credits, i.e., five dollars is the minimum purchase. Each Smartinmate™ Electronic Message costs fifty cents.

/ / /

/ / /

/ / /

62. The "Smart Communications" website contains the following post:

"When you connect with an incarcerated individual in one of the correctional facilities, that provides service to those in their custody, we may share information with the correctional facility, including personal information, partial financial information (excluding your full credit card number and social security number) and the content of any data about any correspondence, photos or other materials that you send to the incarcerated individual. **Those who have been screened and approved for professional accounts, i.e., attorneys, are exempt from having their information content shared with correctional facilities to maintain attorney-client privilege.**"[1]

63. Under the terms of the **Agreement** the Defendants have free access to all inmates' Smartinmate™ Electronic Messages. Virtually any of Defendants' employees can access any inmate's Smartinmate™ Electronic messages at any time without any notice to the inmate or the outside other party. The format of a Smartinmate™ Electronic message is virtually identical to traditional email.

64. "Smart Communications" provides Defendants with word search capacity to search all Smartinmate™ Electronic Messages and/or a particular inmate's electronic messages by a word search. "Smart Communications" also provides Defendants with a messaging alert feature meaning anytime an inmate sends or receives a Smartinmate™ electronic message including messages between attorneys and inmate clients, Defendants can be notified.

65. The "Smart Communications" Smartinmate™ Electronic Messaging System contains a feature which blocks attorney-client communications from view of law enforcement. (*See* Paragraph 62).

66. The Defendants refuse to implement and/or permit "Smart Communications" to implement the attorney-client blocking feature in the Smartinmate™ Electronic Messaging System.

67. Since implementation of the "Smart Communications" Smartinmate™ Electronic Messaging System Defendants review all inmate Smartinmate™ electronic messages including attorney-client messages. Defendants also supply the contents of the electronic messages and/or

---

[1] *See* https://www.smartjailmail.com/privacy-policy.cfm @ "Correctional Facilities."

the actual messages including attorney-client messages to Prosecutors, i.e., Deputy District Attorneys working in the San Mateo District Attorney's Office for use against inmates. Prosecutors may and do request and obtain inmates' Smartinmate™ electronic messages from the Defendants without notice to the inmates or the outside party.

68.     The possibility that Prosecutors could use inmates' Smart Messages against inmates in criminal proceedings is not merely theoretical.  Recently, in *People of the State of California vs. Randolph Haldeman*, Case No. 19-SF-010689-A, SMCSO personnel, both correctional officers and detectives, reviewed Defendant Haldeman's Smart Mail electronic messages on the "Smart Communications" Smartinmate™ Electronic Messaging System, including communications marked as attorney-client privilege between the inmate Defendant's criminal defense lawyer and also the inmate's family law lawyer and bankruptcy lawyer. Defendants' employees print Smart Mail messages and provide the messages to the San Mateo County District Attorney's Office for use in the prosecution of the inmate defendants.

69.     The Defendants refuse to post adequate warning notices to attorneys about the Defendants' surveillance capacity of the communication system.

70.     There is no cost to Defendants to implement the attorney-client blocking feature of the Smart Mail Electronic Messaging System.

71.     The Defendants refuse to implement the attorney-client blocking feature. Defendants' current policy and practice infringes upon Plaintiffs and other attorneys' ability to communicate with their clients housed in Defendants' jails, and on Plaintiffs First Amendment Rights.

72.     Electronic communication, i.e., email and electronic messaging, has become the 21st century means of communication. There are many reasons why. It is faster. It is cheaper. It is more environmentally friendly.

73.     Since the advent of the pandemic, electronic communication has increased. For some of the pandemic the Plaintiff Attorneys barely meet in person in the San Mateo County Jails with their clients.  Attorneys and in custody clients were forced to resort to video conferencing, telephone communications, and electronic messaging.  The Defendants do allow blocking of

attorney-client phone calls and attorney-client video visitation to protect the privileged nature of the communications.

74.     The "Smart Communications" system permits for blocking of video communications between attorneys and clients.  The Defendants permit the use of the blocking function for attorney-client video visitation and do in fact block attorney-client video visitation. The Defendants' telephone system permits blocking attorney-client telephone calls.  The Defendants permit blocking attorney-client telephone calls and do in fact block attorney-client phone calls.

75.     There is no rational reason why the Defendants refuse to implement the attorney-client blocking feature in Smartinmate™ Electronic Messaging System. Again, there is a means to block attorney-client electronic messages from law enforcement view within the "Smart Communications" Smartinmate™ Electronic Messaging System to protect the attorney-client privilege and the confidentiality to attorney-client communications.

76.     The Defendants' policies and practices of monitoring all Smartinmate™ Electronic Messaging System makes it virtually impossible for inmates to communicate confidentially with their defense attorneys and vice versa.  This places a burden on the lawyers' and the inmates' Constitutional Rights, including their Sixth Amendment right to effective assistance of counsel and their First Amendment right to freedom of expression.  The Defendants' policies and practices also implicate due process because it puts Plaintiffs and their clients at a distinct disadvantage compared to law enforcement and County Prosecutors, who do not have to reveal the contents of their email communications to their litigation advisories.

77.     As a result of the Defendants' policies and practices of refusing attorney-client message blocking in the Smartinmate™ Electronic Messaging System inmates who wish to avoid government review of their attorney-client communications must rely on slower and costlier forms of communication such as postal mail and in-person visits.  It can take two or more weeks for inmates to receive postal mail. Unmonitored calls are problematic because there is no predictability as to when an inmate can get access to a phone to call out.  Attorneys cannot place calls to inmates.  The same challenges apply to video visitation.  Additionally, correspondence to

schedule calls and video visitation must sometimes be done via postal mail and/or email and they are themselves time-consuming to arrange.  For an in-person visit, it can take Plaintiffs Attorneys hours in travel, processing and waiting before they can speak with their in custody clients.

78.     Reliance on these other methods of communication is particularly onerous given that the majority of inmates in the San Mateo County Jail are represented by publicly funded counsel who already struggle with heavy caseloads, limited resources, and multiple attorney-client obligations. Consequently, the additional time and expense related to client communication to avoid Smartinmate™ Electronic Messaging impacts Court appointed lawyers and restricts the affordability of privately retained counsel.

79.     This lawsuit is necessary to compel Defendants to implement the attorney-client blocking function in the Smartinmate™ Electronic Messaging System to stop Defendants' invasion of attorney client communications and/or to provide adequate warnings about the onerous and invasive level of surveillance of Smart Mail electronic messages.

## PART TWO

## STOPPING SMCSO'S IMPLEMENTATION OF THE PATENTED MAILGUARD LEGAL™ SYSTEM

80.     This lawsuit also seeks to halt the Defendants implementation of the "Smart Communications" SmartMail Patented MailGuard Legal™ System.  *See* Subsection E of Exhibit A to the **Agreement**.  The Patented MailGuard Legal™ System provides that mailed legal mail will be opened in front of the inmate.  The paper mail will then be scanned and transmitted electronically to the inmate through the Smartinmate™ Electronic Messaging System.

81.     Given that the Defendants refuse to implement the blocking feature of the Smartinmate™ Electronic Messaging System, implementation of the MailGuard Legal™ System would essentially eliminate any semblance of attorney-client privilege.  This lawsuit prays for an Order prohibiting implementation of the SmartMail Patented MailGuard Legal™ System.

82.     The Plaintiff Attorneys have multiple in custody clients.  The Plaintiff Attorneys mail letters, reports, and other confidential materials to their clients.  Many letters include legal

advice, strategy, discussions, answers to legal questions and proposed pleadings, among other things. Other lawyers also mail documents to their clients incarcerated in Defendants' jails.

83. Although incarceration necessarily involves a loss of privacy and some liberty rights, it is well established that people in jails retain First Amendment rights and, in particular, the right to counsel. "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84, 107 S. Ct. 2254, 2259 (1987).

84. The need for confidentiality of attorney-client communications is particularly acute in a custodial setting. *See, e.g., Lanza v. New York*, 370 U.S. 139 (1962) ("[Even] in a jail, or perhaps especially there, the relationships which the law has endowed with particularized confidentiality must continue to receive unceasing protection . . ." (citations omitted)).

85. The U.S. Court of Appeals for the Third Circuit has held that "opening properly marked incoming attorney of court mail outside a prisoner's presence, or reading such mail, infringes the Constitution." *Bieregu v. Reno*, 59 F.3d 1445, 1450-51 (3d Cir. 1995) (citing decisions from other Courts of Appeals). The Court held that the failure to safeguard attorney-client confidentiality "chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." *Id.* at 1452. Indeed, the U.S. Supreme Court has ruled that the *only* way to ensure the confidentiality of legal mail to incarcerated people is to require that prison officials open legal mail only in the presence of the individual to whom it is addressed. *Wolfe v. McDonnell*, 418 U.S. 539, 576-77, 94 S. Ct. 2963, 2984-85 (1974).

86. Until recently, the Defendants followed a policy for legal mail ("former policy") consistent with these constitutional requirements. Recently, Defendants' jail staff have begun opening legal mail outside the presence of the receiving inmate. Defendants' staff have told inmates they are going to start scanning legal mail.

87. The "Smart Communications" Patented MailGuard Legal™ System is rife with Constitutional deficiencies. Under the "plan" legal mail is to be scanned into a system that currently has no attorney-client blocking function. The original attorney-client privileged letter or documents are taken from the inmate and stored outside the presence of the inmate in some

unknown place.  This eviscerates the assurance of confidentiality that the First Amendment requires.

88.     The Patented MailGuard Legal™ System as set forth in Subsection E of Exhibit 1 to the **Agreement** threatens the Plaintiffs' obligation to communicate with their clients in a manner that prevents disclosure of confidentiality communications to unauthorized recipients including SMCSO corrections officers, employees of "Smart Communications" and others.

89.     The Patented MailGuard Legal™ System threatens the Plaintiffs' Attorneys duty to communicate confidentially with their clients.  A lawyer cannot meaningfully represent his/her client and a client cannot make informed decisions unless the lawyer and the client can freely communicate.

90.     The Patented MailGuard Legal™ System will interfere with attorney-client communications and implicates other professional responsibilities including the lawyers' duty to abide by the client's decisions regarding representation, provide competent representation and to act with diligence and promptness in representing a client.

91.     The Patented MailGuard Legal™ System is not rationally related to a legitimate penological interest and the policy is illegal on its face.

92.     This lawsuit seeks to prohibit Defendants from scanning attorney client paper mail communications and transmitting them electronically to the inmate client recipient by way of the Patented MailGuard Legal™ System in the Defendants' jails.

93.     The mere fact that the original legal mail has been opened and is being stored outside the presence of the incarcerated individual eviscerates the assurances of confidentiality that the First Amendment requires.  Further, any page-by-page inspection of legal mail would be equivalent to skimming or reading that mail, which is itself illegal.

94.     Plaintiffs have been advised by experts in professional ethics that the new policy raises sufficient concerns that they should no longer communicate with their clients by mail under this new policy.

95.     The New Legal Mail Policy threatens lawyers' obligation to communicate with their clients in a manner that prevents inadvertent disclosure of confidential client information to

unauthorized recipients, a group that obviously includes corrections officers and other Defendants staff. Cal. State Bar Rule 3-100.

96.    The New Legal Mail Policy also threatens lawyers' duty of communication with their clients. Cal. State Bar Rule 3-100.  A lawyer cannot meaningfully represent their client, and the client cannot make informed decisions regarding the course of the representation, unless the two are able to communicate freely and openly.

97.    The Defendants' New Legal Mail Policy's interference with attorney-client communications implicates other professional responsibilities, including a lawyer's obligation to "abide by a client's decisions concerning the objectives of representation." Cal. State Bar Rule 3-100 to provide "competent representation to a client," and to "act with reasonable diligence and promptness in representing a client". Cal. State Bar Rule 3-100.

98.    Plaintiffs' failure to heed these professional obligations would subject themselves to disciplinary proceedings and professional sanctions. Cal. State Bar Rule 3-100. ("Failure to comply with an obligation or prohibition imposed by a Rule is a basis for invoking the disciplinary process.").

99.    Given the significant professional concerns created by the Defendants' New Legal Mail Policy, Plaintiffs may have to cease sending privileged communications to clients and prospective clients incarcerated within Defendants' jails.

100.    Defendants are implementing the new policy.  Plaintiffs will be unable to send meaningful, substantive responses to a scope of inmates who have requested legal assistance and advice.

101.    The new policy will adversely affecting Plaintiffs' and all attorneys' ability to represent clients in ongoing litigation.

## DEFENDANTS' NEW LEGAL MAIL POLICY VIOLATES PLAINTIFFS' FIRST AMENDMENT RIGHTS

102.    There is no valid, rational connection between the risk being addressed (which does not involve legitimate legal mail at all) and the wholesale changes Defendants are now implementing.

103.    The New Legal Mail Policy will effectively prevent Plaintiffs and their clients from using the mail to engage in confidential communications.

104.    Given the limited access and means by which attorneys and their clients in Defendants' jails can speak by telephone, and the difficulties associated with in-person meetings, communication by mail is essential.

105.    Plaintiffs do not have the staff and resources necessary to arrange for and attend in-person visits for all such communications.  Often, Plaintiffs must travel hours and incur substantial additional costs for in-person visits, which necessarily limits what these attorneys can do for these and other clients.

106.    With respect to legal mail, the burden on First Amendment Rights and the attorney-client privilege is not reasonably related to the Defendants' stated interest or any legitimate penological interest.

107.    As a direct and proximate result of Defendants' New Legal Mail Policy, Plaintiffs and other lawyers will be harmed.  The new policy chills the exercise of the Plaintiffs' and their staffs' First Amendment Rights.  It substantially impedes the Plaintiffs' ability to zealously and competently represent their clients.

108.    The Plaintiffs will also have to incur extra costs in both time and money as a result of having to make personal visits with their clients in Defendants' jails in lieu of mail communications.

109.    As a direct and proximate cause of Defendants' New Legal Mail Policy, the Plaintiffs' clients will be harmed.  In particular, the policy infringes upon and limits their exercise of the First Amendment Rights to communicate confidentially with their attorneys.

110.    Unless the Court enjoins, preliminarily and permanently thereafter, Defendants from implementing the new policy, the First Amendment Rights of Plaintiffs and other lawyers, their employees, and their clients and prospective clients will be abridged.

## COUNT I – VIOLATION OF FIRST AMENDMENT RIGHTS

111.    Plaintiffs incorporate by reference paragraphs 1 through 110 of this Complaint as though set forth fully herein.

112.    The First Amendment, as incorporated in the Fourteenth, prohibits sates from "abridging the freedom of speech." U.S. Const. Amend. I.

113.    Plaintiffs have a protected First Amendment right to free speech. *See, e.g., Hirschkop v. Snead*, 594 F.2d 356, 366 (4th Cir. 1979); *Kuchka v. Kile*, 634 F. Supp. 502, 511 (M.D. Pa. 1985) (citing *Hirschkop*).  Implicit in this right is the right of attorneys to communicate with their clients, including those that are incarcerated. *Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989) (those who wish to communicate with prisoners "have a First Amendment interest in access to prisoners"); *Procunier v. Martinez*, 416 U.S. 396, 408-09, 94 S. Ct. 1800 (1974) (both incarcerated people and those with whom they correspond have First Amendment Rights that can be infringed by unjustified government interference).

114.    Further, the Plaintiffs generally have a duty to communicate with their clients and to protect the confidentiality of materials protected by the attorney-client privilege. *See,* Cal. State Bar Rule 3-100 and Cal. Business and Professions Code 6068(e) Rule 1.6.  The New Legal Mail Policy and the Smart Mail digital electronic communication system without the attorney-client block function interfere with Plaintiffs' and other lawyers' duty to communicate with their clients, their duty to protect the confidentiality of client communications, and their duty to advocate zealously on behalf of their clients currently incarcerated in Defendants' jails.

115.    People who are incarcerated "do not forfeit their First Amendment right to use of the mails." *Bieregu v. Reno*, 59 F.3d 1445, 1452 (3d Cir. 1995).

116.    A pattern and practice of opening legal mail outside the presence of the addressee interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the incarcerated individual's right to freedom of speech. *Jones v. Brown*, 461 F.3d 353, 359 (3d Cir. 2006).  Any such practice "deprives the expression of confidentiality and chills the inmates' protected expressions, *regardless of the state's good-faith protestations that it does not, and will not, read the content of the communications.*" *Id.* (emphasis added).  "[T]he only way to ensure that mail is not read when opened . . . is to require that it be done in the presence of the inmate to whom it is addressed." *Bieregu*, 59 F.3d at 1456 (citing *Wolff v. McDonnell*, 418 U.S. 539, 576-577 (1974)).

117.    The proposed New Legal Mail Policy and refusal to use the attorney-client blocking function in the Smart Mail Messaging System is not rationally related to a legitimate penological interest and are therefore void on their face.

118.    Unless injunctive relief is granted, the First Amendment Rights of Plaintiffs and other attorneys, their employees, their clients, and their prospective clients, will continue to be infringed upon and chilled, and attorney-client communications will lose their confidential, privileged character.

## PRAYER FOR RELIEF

WHEREFORE, the Attorney Plaintiffs, on behalf of themselves, their employees, and their current and prospective inmate clients, and other attorneys and their current and prospective clients seek judgment in their favor and against Defendants, and in particular seek:

A.    A Declaration that Defendants' actions violate their Constitutional Rights including but not limited to their First Amendment Rights, and the rights of their clients;

B.    1. An injunction – preliminary and permanent thereafter compelling the SMCSO to implement the attorney-client blocking function in the "Smart Communications" Smartinmate™ Electronic Messaging System; or providing warnings that the current system has NO privacy and all communications are subject to surveillance, being read, copied, preserved and distributed to all law enforcement; and (2) an injunction- preliminary and permanent enjoining Defendants from implementing the "Smart Communications" Patented MailGuard Legal™ System;

C.    Costs, interest, and attorneys' fees; and

D.    Any other relief deemed just and appropriate.

Dated:  September 1, 2022          **LAW OFFICE OF PAULA CANNY**

_____/s/_____
PAULA CANNY
Attorney for Plaintiffs,
CURTIS L. BRIGGS, ROBERT CANNY
and MATTHEW MURILLO

Dated:  September 1, 2022          **LAW OFFICES OF ARA JABAGCHOURIAN, P.C.**


_____/s/_____
ARA JABAGCHOURIAN
Attorney for Plaintiffs
CURTIS L. BRIGGS, ROBERT CANNY
and MATTHEW MURILLO


Dated:  September 1, 2022          **LAW OFFICE OF RANDALL KNOX**


_____/s/_____
RANDALL KNOX
Attorney for Plaintiffs
CURTIS L. BRIGGS, ROBERT CANNY
and MATTHEW MURILLO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VERIFICATION**

I, CURTIS L. BRIGGS, am a Plaintiff in this case, and I swear under the penalty of perjury pursuant to 28 U.S.C. 1746 that the information herein is true and correct to the best of my knowledge, information and belief.


Dated: September 1, 2022                    _____/s/_____
                                            CURTIS L BRIGGS

1

2

**<u>VERIFICATION</u>**

3

    I, ROBERT CANNY, am a Plaintiff in this case, and I swear under the penalty of perjury

4

pursuant to 28 U.S.C. 1746 that the information herein is true and correct to the best of my

5

knowledge, information and belief.

6

7

8

Dated:  September 1, 2022

                              /s/_____

9

                              ROBERT CANNY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## **VERIFICATION**

3

I, MATTHEW MURILLO, am a Plaintiff in this case, and I swear under the penalty of

4

perjury pursuant to 28 U.S.C. 1746 that the information herein is true and correct to the best of

5

my knowledge, information and belief.

6

7

8

Dated:  September 1, 2022                    _____/s/_____
                                                         MATTHEW MURILLO

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

## Agreement Between
## The County of San Mateo and Smart
## Communications Holding, Inc.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

**Agreement No. 30000-22-R 078425**

# AGREEMENT BETWEEN THE COUNTY OF SAN MATEO AND SMART COMMUNICATIONS HOLDING, INC.

This Agreement is entered into this 01 day of September, 2021, by and between the County of San Mateo, a political subdivision of the state of California, hereinafter called "County," and Smart Communications Holding, Inc, hereinafter called "Contractor."

*       *       *

Whereas, pursuant to Section 31000 of the California Government Code, County may contract with independent contractors for the furnishing of such services to or for County or any Department thereof; and

Whereas, it is necessary and desirable that Contractor be retained for the provision of Inmate Tablet and Video Visitation Services and Postal Mail Elimination System Services within the Maguire Correctional Facility and the Maple Street Correctional Center.

**Now, therefore, it is agreed by the parties to this Agreement as follows:**

**1.      Exhibits and Attachments**

The following exhibits and attachments are attached to this Agreement and incorporated into this Agreement by this reference:

>      Exhibit A—Services
>      Exhibit B—Rates & Fees
>      Attachment I—§ 504 Compliance

**2.      Services to be performed by Contractor**

In consideration of the County granting Contractor the exclusive right and license to install, maintain, and operate inmate communications services and related hardware and software and to provide associated services within the identified County Correctional Centers, Contractor shall perform services for County in accordance with the terms, conditions, and specifications set forth in this Agreement and in Exhibit A. In no event shall County be required to provide payment of any type to Contractor for performance of these services.

**3.      Term**

Subject to compliance with all terms and conditions, the term of this Agreement shall be from **September 01, 2021,** through **August 31, 2024.** At its sole discretion, County may exercise the option to extend this agreement for an additional two one (1) year renewals thereafter, under all the same contract provisions herein, by written notice to Contractor by County, or no later than thirty (30) days prior to the termination of the original three-year term or first one-year renewal term.

**4.      Termination**

This Agreement may be terminated by Contractor or by the County at any time without a requirement of good cause upon ninety (90) days' advance written notice to the other party.

---

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

County may terminate this Agreement or a portion of the services referenced in the Attachments and Exhibits based upon the unavailability of Federal, State, or County funds by providing written notice to Contractor as soon as is reasonably possible after County learns of said unavailability of outside funding.

County may terminate this Agreement for cause. In order to terminate for cause, County must first give Contractor notice of the alleged breach. Contractor shall have five business days after receipt of such notice to respond and a total of ten calendar days after receipt of such notice to cure the alleged breach. If Contractor fails to cure the breach within this period, County may immediately terminate this Agreement without further action. The option available in this paragraph is separate from the ability to terminate without cause with appropriate notice described above. In the event that County provides notice of an alleged breach pursuant to this section, County may, in extreme circumstances, immediately suspend performance of services and payment under this Agreement pending the resolution of the process described in this paragraph. County has sole discretion to determine what constitutes an extreme circumstance for purposes of this paragraph, and County shall use reasonable judgment in making that determination.

5.  **Contract Materials**

At the end of this Agreement, or in the event of termination, all finished or unfinished documents, data, studies, maps, photographs, reports, and other written materials (collectively referred to as "contract materials") prepared by Contractor under this Agreement shall become the property of County and shall be promptly delivered to County. Upon termination, Contractor may make and retain a copy of such contract materials if permitted by law.

6.  **Relationship of Parties**

Contractor agrees and understands that the work/services performed under this Agreement are performed as an independent contractor and not as an employee of County and that neither Contractor nor its employees acquire any of the rights, privileges, powers, or advantages of County employees.

7.  **Hold Harmless**

    a.  **General Hold Harmless**

Contractor shall indemnify and save harmless County and its officers, agents, employees, and servants from all claims, suits, or actions of every name, kind, and description resulting from this Agreement, the performance of any work or services required of Contractor under this Agreement, or payments made pursuant to this Agreement brought for, or on account of, any of the following:

    (A) injuries to or death of any person, including Contractor or its employees/officers/agents;

    (B) damage to any property of any kind whatsoever and to whomsoever belonging;

    (C) any sanctions, penalties, or claims of damages resulting from Contractor's failure to comply, if applicable, with the requirements set forth in the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and all Federal regulations promulgated thereunder, as amended; or

    (D) any other loss or cost, including but not limited to that caused by the concurrent active or passive negligence of County and/or its officers, agents, employees, or servants. However, Contractor's duty to indemnify and save harmless under this Section shall not apply to injuries or damage for which County has been found in a court of competent jurisdiction to be solely liable by reason of its own negligence or willful misconduct.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

The duty of Contractor to indemnify and save harmless as set forth by this Section shall include the duty to defend as set forth in Section 2778 of the California Civil Code.

### b. Intellectual Property Indemnification

Contractor hereby certifies that it owns, controls, and/or licenses and retains all right, title, and/or interest in and to any intellectual property it uses in relation to this Agreement, including the design, look, feel, features, source code, content, and/or other technology relating to any part of the services it provides under this Agreement and including all related patents, inventions, trademarks, and copyrights, all applications therefor, and all trade names, service marks, know how, and trade secrets (collectively referred to as "IP Rights") except as otherwise noted by this Agreement.

Contractor warrants that the services it provides under this Agreement do not infringe, violate, trespass, or constitute the unauthorized use or misappropriation of any IP Rights of any third party. Contractor shall defend, indemnify, and hold harmless County from and against all liabilities, costs, damages, losses, and expenses (including reasonable attorney fees) arising out of or related to any claim by a third party that the services provided under this Agreement infringe or violate any third-party's IP Rights provided any such right is enforceable in the United States. Contractor's duty to defend, indemnify, and hold harmless under this Section applies only provided that: (a) County notifies Contractor promptly in writing of any notice of any such third-party claim; (b) County cooperates with Contractor, at Contractor's expense, in all reasonable respects in connection with the investigation and defense of any such third-party claim; (c) Contractor retains sole control of the defense of any action on any such claim and all negotiations for its settlement or compromise (provided Contractor shall not have the right to settle any criminal action, suit, or proceeding without County's prior written consent, not to be unreasonably withheld, and provided further that any settlement permitted under this Section shall not impose any financial or other obligation on County, impair any right of County, or contain any stipulation, admission, or acknowledgement of wrongdoing on the part of County without County's prior written consent, not to be unreasonably withheld); and (d) should services under this Agreement become, or in Contractor's opinion be likely to become, the subject of such a claim, or in the event such a third party claim or threatened claim causes County's reasonable use of the services under this Agreement to be seriously endangered or disrupted, Contractor shall, at Contractor's option and expense, either: (i) procure for County the right to continue using the services without infringement or (ii) replace or modify the services so that they become non-infringing but remain functionally equivalent.

Notwithstanding anything in this Section to the contrary, Contractor will have no obligation or liability to County under this Section to the extent any otherwise covered claim is based upon: (a) any aspects of the services under this Agreement which have been modified by or for County (other than modification performed by, or at the direction of, Contractor) in such a way as to cause the alleged infringement at issue; and/or (b) any aspects of the services under this Agreement which have been used by County in a manner prohibited by this Agreement.

The duty of Contractor to indemnify and save harmless as set forth by this Section shall include the duty to defend as set forth in Section 2778 of the California Civil Code.

### 8. Assignability and Subcontracting

Contractor shall not assign this Agreement or any portion of it to a third party or subcontract with a third party to provide services required by Contractor under this Agreement without the prior written consent of County. Any such assignment or subcontract without County's prior written consent shall give County the right to automatically and immediately terminate this Agreement without penalty or advance notice.

### 9. Insurance

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

### a. General Requirements

Contractor shall not commence work or be required to commence work under this Agreement unless and until all insurance required under this Section has been obtained and such insurance has been approved by County's Risk Management, and Contractor shall use diligence to obtain such insurance and to obtain such approval. Contractor shall furnish County with certificates of insurance evidencing the required coverage, and there shall be a specific contractual liability endorsement extending Contractor's coverage to include the contractual liability assumed by Contractor pursuant to this Agreement. These certificates shall specify or be endorsed to provide that thirty (30) days' notice must be given, in writing, to County of any pending change in the limits of liability or of any cancellation or modification of the policy.

### b. Workers' Compensation and Employer's Liability Insurance

Contractor shall have in effect during the entire term of this Agreement workers' compensation and employer's liability insurance providing full statutory coverage. In signing this Agreement, Contractor certifies, as required by Section 1861 of the California Labor Code, that (a) it is aware of the provisions of Section 3700 of the California Labor Code, which require every employer to be insured against liability for workers' compensation or to undertake self-insurance in accordance with the provisions of the Labor Code, and (b) it will comply with such provisions before commencing the performance of work under this Agreement.

### c. Liability Insurance

Contractor shall take out and maintain during the term of this Agreement such bodily injury liability and property damage liability insurance as shall protect Contractor and all of its employees/officers/agents while performing work covered by this Agreement from any and all claims for damages for bodily injury, including accidental death, as well as any and all claims for property damage which may arise from Contractor's operations under this Agreement, whether such operations be by Contractor, any subcontractor, anyone directly or indirectly employed by either of them, or an agent of either of them. Such insurance shall be combined single limit bodily injury and property damage for each occurrence and shall not be less than the amounts specified below:

| | | |
|---|---|---|
| (a) | Comprehensive General Liability... | $1,000,000 |
| (b) | Motor Vehicle Liability Insurance... | $1,000,000 |
| (c) | Professional Liability.................. | $1,000,000 |

County and its officers, agents, employees, and servants shall be named as additional insured on any such policies of insurance, which shall also contain a provision that (a) the insurance afforded thereby to County and its officers, agents, employees, and servants shall be primary insurance to the full limits of liability of the policy and (b) if the County or its officers, agents, employees, and servants have other insurance against the loss covered by such a policy, such other insurance shall be excess insurance only.

In the event of the breach of any provision of this Section, or in the event any notice is received which indicates any required insurance coverage will be diminished or canceled, County, at its option, may, notwithstanding any other provision of this Agreement to the contrary, immediately declare a material breach of this Agreement and suspend all further work and payment pursuant to this Agreement.

### 10. Compliance With Laws

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

All services to be performed by Contractor pursuant to this Agreement shall be performed in accordance with all applicable Federal, State, County, and municipal laws, ordinances, and regulations, including but not limited to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) and the Federal Regulations promulgated thereunder, as amended (if applicable), the Business Associate requirements set forth in Attachment H (if attached), the Americans with Disabilities Act of 1990, as amended, and Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of disability in programs and activities receiving any Federal or County financial assistance. Such services shall also be performed in accordance with all applicable ordinances and regulations, including but not limited to appropriate licensure, certification regulations, provisions pertaining to confidentiality of records, and applicable quality assurance regulations. In the event of a conflict between the terms of this Agreement and any applicable State, Federal, County, or municipal law or regulation, the requirements of the applicable law or regulation will take precedence over the requirements set forth in this Agreement.

Further, Contractor certifies that it and all of its subcontractors will adhere to all applicable provisions of Chapter 4.106 of the San Mateo County Ordinance Code, which regulates the use of disposable food service ware. Accordingly, Contractor shall not use any non-recyclable plastic disposable food service ware when providing prepared food on property owned or leased by the County and instead shall use biodegradable, compostable, reusable, or recyclable plastic food service ware on property owned or leased by the County.

Contractor will timely and accurately complete, sign, and submit all necessary documentation of compliance.

## 11. Non-Discrimination and Other Requirements

### a. General Non-discrimination

No person shall be denied any services provided pursuant to this Agreement (except as limited by the scope of services) on the grounds of race, color, national origin, ancestry, age, disability (physical or mental), sex, sexual orientation, gender identity, marital or domestic partner status, religion, political beliefs or affiliation, familial or parental status (including pregnancy), medical condition (cancer-related), military service, or genetic information.

### b. Equal Employment Opportunity

Contractor shall ensure equal employment opportunity based on objective standards of recruitment, classification, selection, promotion, compensation, performance evaluation, and management relations for all employees under this Agreement. Contractor's equal employment policies shall be made available to County upon request.

### c. Section 504 of the Rehabilitation Act of 1973

Contractor shall comply with Section 504 of the Rehabilitation Act of 1973, as amended, which provides that no otherwise qualified individual with a disability shall, solely by reason of a disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination in the performance of any services this Agreement. This Section applies only to contractors who are providing services to members of the public under this Agreement.

### d. Compliance with County's Equal Benefits Ordinance

Contractor shall comply with all laws relating to the provision of benefits to its employees and their spouses or domestic partners, including, but not limited to, such laws prohibiting discrimination in the provision of

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

such benefits on the basis that the spouse or domestic partner of the Contractor's employee is of the same or opposite sex as the employee.

### e.  Discrimination Against Individuals with Disabilities

The nondiscrimination requirements of 41 C.F.R. 60-741.5(a) are incorporated into this Agreement as if fully set forth here, and Contractor and any subcontractor shall abide by the requirements of 41 C.F.R. 60–741.5(a).  This regulation prohibits discrimination against qualified individuals on the basis of disability and requires affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified individuals with disabilities.

### f.  History of Discrimination

Contractor certifies that no finding of discrimination has been issued in the past 365 days against Contractor by the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, or any other investigative entity.  If any finding(s) of discrimination have been issued against Contractor within the past 365 days by the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, or other investigative entity, Contractor shall provide County with a written explanation of the outcome(s) or remedy for the discrimination prior to execution of this Agreement.  Failure to comply with this Section shall constitute a material breach of this Agreement and subjects the Agreement to immediate termination at the sole option of the County.

### g.  Reporting: Violation of Non-discrimination Provisions

Contractor shall report to the County Manager the filing in any court or with any administrative agency of any complaint or allegation of discrimination on any of the bases prohibited by this Section of the Agreement or the Section titled "Compliance with Laws".  Such duty shall include reporting of the filing of any and all charges with the Equal Employment Opportunity Commission, the California Department of Fair Employment and Housing, or any other entity charged with the investigation or adjudication of allegations covered by this subsection within 30 days of such filing, provided that within such 30 days such entity has not notified Contractor that such charges are dismissed or otherwise unfounded.  Such notification shall include a general description of the circumstances involved and a general description of the kind of discrimination alleged (for example, gender-, sexual orientation-, religion-, or race-based discrimination).

Violation of the non-discrimination provisions of this Agreement shall be considered a breach of this Agreement and subject the Contractor to penalties, to be determined by the County Manager, including but not limited to the following:

    i.   termination of this Agreement;
    ii.   disqualification of the Contractor from being considered for or being awarded a County contract for a period of up to 3 years;
    iii.   liquidated damages of $2,500 per violation; and/or
    iv.   imposition of other appropriate contractual and civil remedies and sanctions, as determined by the County Manager.

To effectuate the provisions of this Section, the County Manager shall have the authority to offset all or any portion of the amount described in this Section against amounts due to Contractor under this Agreement or any other agreement between Contractor and County.

### h.  Compliance with Living Wage Ordinance

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

As required by Chapter 2.88 of the San Mateo County Ordinance Code, Contractor certifies all contractor(s) and subcontractor(s) obligated under this contract shall fully comply with the provisions of the County of San Mateo Living Wage Ordinance, including, but not limited to, paying all Covered Employees the current Living Wage and providing notice to all Covered Employees and Subcontractors as required under the Ordinance.

### I.   Compliance with Prison Rape Elimination Act Standards

Contractor shall comply with the Prison Rape Elimination Act (PREA) of 2003 (Federal Law 42. U.S.C. 15601 ET. Seq.), and applicable PREA Standards including but not limited to those regarding preventing, reporting, monitoring, and eradicating any form of sexual abuse within San Mateo County Sheriff's Office Facilities/Programs /Offices owned, operated or contracted. Failure to comply with PREA, including PREA Standards and related San Mateo County Sheriff's Office Policies, may result in termination of the contract.

### 12.   Compliance with County Employee Jury Service Ordinance

Contractor shall comply with Chapter 2.85 of the County's Ordinance Code, which states that Contractor shall have and adhere to a written policy providing that its employees, to the extent they are full-time employees and live in San Mateo County, shall receive from the Contractor, on an annual basis, no fewer than five days of regular pay for jury service in San Mateo County, with jury pay being provided only for each day of actual jury service. The policy may provide that such employees deposit any fees received for such jury service with Contractor or that the Contractor may deduct from an employee's regular pay the fees received for jury service in San Mateo County. By signing this Agreement, Contractor certifies that it has and adheres to a policy consistent with Chapter 2.85. For purposes of this Section, if Contractor has no employees in San Mateo County, it is sufficient for Contractor to provide the following written statement to County: "For purposes of San Mateo County's jury service ordinance, Contractor certifies that it has no full-time employees who live in San Mateo County. To the extent that it hires any such employees during the term of its Agreement with San Mateo County, Contractor shall adopt a policy that complies with Chapter 2.85 of the County's Ordinance Code." The requirements of Chapter 2.85 do not apply if this Agreement's total value listed in the Section titled "Payments", is less than one-hundred thousand dollars ($100,000), but Contractor acknowledges that Chapter 2.85's requirements will apply if this Agreement is amended such that its total value meets or exceeds that threshold amount.

### 13.   Retention of Records; Right to Monitor and Audit

(a) Contractor shall maintain all required records relating to services provided under this Agreement for three (3) years after County makes final payment and all other pending matters are closed, and Contractor shall be subject to the examination and/or audit by County, a Federal grantor agency, and the State of California.

(b) Contractor shall comply with all program and fiscal reporting requirements set forth by applicable Federal, State, and local agencies and as required by County.

(c) Contractor agrees upon reasonable notice to provide to County, to any Federal or State department having monitoring or review authority, to County's authorized representative, and/or to any of their respective audit agencies access to and the right to examine all records and documents necessary to determine compliance with relevant Federal, State, and local statutes, rules, and regulations, to determine compliance with this Agreement, and to evaluate the quality, appropriateness, and timeliness of services performed.

### 14.   Merger Clause; Amendments

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA5

This Agreement, including the Exhibits and Attachments attached to this Agreement and incorporated by reference, constitutes the sole Agreement of the parties to this Agreement and correctly states the rights, duties, and obligations of each party as of this document's date. In the event that any term, condition, provision, requirement, or specification set forth in the body of this Agreement conflicts with or is inconsistent with any term, condition, provision, requirement, or specification in any Exhibit and/or Attachment to this Agreement, the provisions of the body of the Agreement shall prevail. Any prior agreement, promises, negotiations, or representations between the parties not expressly stated in this document are not binding. All subsequent modifications or amendments shall be in writing and signed by the parties.

## 15.   Controlling Law; Venue

The validity of this Agreement and of its terms, the rights and duties of the parties under this Agreement, the interpretation of this Agreement, the performance of this Agreement, and any other dispute of any nature arising out of this Agreement shall be governed by the laws of the State of California without regard to its choice of law or conflict of law rules. Any dispute arising out of this Agreement shall be venued either in the San Mateo County Superior Court or in the United States District Court for the Northern District of California.

## 16.   Notices

Any notice, request, demand, or other communication required or permitted under this Agreement shall be deemed to be properly given when both: (1) transmitted via email to the email address listed below; and (2) sent to the physical address listed below by either being deposited in the United States mail, postage prepaid, or deposited for overnight delivery, charges prepaid, with an established overnight courier that provides a tracking number showing confirmation of receipt.

In the case of County, to:

| | |
|---|---|
| Name/Title: | Veronica Ruiz, Management Analyst |
| Address: | 400 County Center, 3rd floor, Redwood City, CA 94063 |
| Telephone: | 650.363.7819 |
| Email: | VRuiz@smcgov.org |

In the case of Contractor, to:

| | |
|---|---|
| Name/Title: | Jonathan Logan, CEO |
| Address: | 10491 72nd Street, Siminole, FL 33777 |
| Telephone: | 888.253.5178 |
| Email: | Jon.Logan@smartcommunications.us |

## 17.   Electronic Signature

Both County and Contractor wish to permit this Agreement and future documents relating to this Agreement to be digitally signed in accordance with California law and County's Electronic Signature Administrative Memo. Any party to this Agreement may revoke such agreement to permit electronic signatures at any time in relation to all future documents by providing notice pursuant to this Agreement.

## 18.   Payment of Permits/Licenses

Contractor bears responsibility to obtain any license, permit, or approval required from any agency for work/services to be performed under this Agreement at Contractor's own expense prior to commencement of said work/services. Failure to do so will result in forfeit of any right to compensation under this Agreement.

*       *       *

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

In witness of and in agreement with this Agreement's terms, the parties, by their duly authorized representatives, affix their respective signatures:

**For Contractor**: SMART COMMUNICATIONS HOLDING, INC.

| | | |
|---|---|---|
| ECC645FD8EA1484... | 8/23/2021 \| 4:25 PM EDT | Jon Logan |
| **Contractor Signature** | **Date** | **Contractor Name (please print)** |

COUNTY OF SAN MATEO

By: _____          Resolution No. 078425

President, Board of Supervisors, San Mateo County

Date:  September 14, 2021

ATTEST:

By: _____

Clerk of Said Board

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

**Exhibit A - Services**

1. **Description of Services to be Performed.**

    Service Provider will provide Inmate Tablet and Video Visitation Services and Postal Mail Elimination System Services within the Maguire Correctional Facility and the Maple Street Correctional Center.

    A. **SmartTablet™ and Secure Network**

    1) Contractor will provide the SmartTablet™ system and its entire supporting infrastructure at no cost to County. Services will be provided at the following locations:

        Maguire Correctional Facility – 300 Bradford Street, Redwood City, California

        Maple Street Correctional Center – 1300 Maple Street, Redwood City, California

        a. SmartTablet™ features

            i. The SmartTablet™ is a custom, wireless, ruggedized and correctional grade tablet of our custom specifications that will connect to our secure network.

            ii. The SmartTablet™ software operating system and applications are all custom-compiled for a corrections environment to ensure that only the minimum operating system components and applications are present. The inmate only has access to applications that are approved for their use, and the operating system is only allowed to connect to our own secure wireless network within the facility.

            iii. The network is designed to facilitate applications within a corrections environment. Provider utilizes a deny-by-default policy on all traffic, so nothing may traverse the network unless specifically allowed and enabled. Provider utilizes a defense-in-depth strategy which employs many layers of security. If any one layer of security is breached, there are many others to provide continuing protection.

        b. Grievances, General and Medical Requests

            i. Provider shall provide at no cost to the County or inmates, electronic general and medical requests as well as well as electronic grievance forms via the SmartTablet™ or SmartKiosk™.

            ii. Provider's system presents inmates with a list of available forms, and once a form has been selected and submitted, it is automatically routed to the appropriate person or department for processing.

        c. Law Library

            i. Provider shall provide access via the SmartTablet™ or SmartKiosk™ to a law library at no cost. The law library provides access to Federal and State statutes and case law, as well as a legal dictionary, practice manual, and other legal aides to assist inmates with researching material appropriate for their case.

        d. Electronic Entertainment & Education

            i. Provider shall provide access to its SmartEntertainment™ platform via the SmartTablet™ for streaming basic content (free) and premium content (at a rate of one cent ($.01) per minute).

            ii. Provider will provide free access to its extensive SmartEd™ educational platform via the SmartTablet™, where a full suite of Educational Programs can be made available.

        e. Commissary Hosting and Integration

---

County of San Mateo I Smart Communications Holding, Inc.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

      i. At County's request, Provider will host County's commissary vendor's menu on Provider's system, at no cost to County.

      ii. At County's request, Provider will integrate with County's jail management system (JMS) at no cost to County.

f. Future Inmate Communication Services

      i. At County's option and request, Provider may provide additional inmate communication services through this contract, including inmate telephone services.

g. Provider shall provide the inmate communication services described herein by way of County's previously installed kiosks and Provider's previously installed SmartTablet™ System, at no cost to County. This includes:

      i. Supporting tablet charging stations

      ii. Two (2) Visit Control Servers

      iii. Two (2) Network Firewalls

      iv. Twenty-three (23) Remote Access Points to connect to WiFi

h. Provider will furnish the proprietary SmartTablet™ on a 1:3 inmate to tablet ratio based on the Average Daily Population ("ADP"). The SmartTablets™ will be provided to inmates free of charge and free of any rental fees.

i. Provider will monitor usage and increase supply as needed or as otherwise agreed by the parties. Sufficient reserve tablets shall also be provided. County shall determine which inmates have access to the SmartTablets™.

j. Distribution and Refurbishment Plan (SmartTablets™)

      i. Provider will provide a tablet charging station and "home base" within each housing unit within the facility. These home bases will be permanently installed into a housing area (e.g. wall mounted). Each home base provides the necessary connections for charging the tablets, as well as a convenient storage location to ensure all tablets are accounted for during non-usage times.

      ii. Each tablet is assigned to a specific housing area and will only allow inmates within that housing area to sign in and use a tablet. Individual tablets are not assigned to specific inmates. Any inmate in a given housing unit may use any tablet that is assigned to that housing unit. If a tablet that an inmate is using stops working, they can return it to a deputy for maintenance, and then take a different tablet and sign on and gain full access to their account and content. Provider will provide to the County a sufficient number of extra SmartTablets™ so that the available number of SmartTablets™ will always meet the approved ratio. In the event a tablet stops working, no longer holds a charge, is damaged, or is otherwise in need of service, facility staff can replace the malfunctioning tablet with a new working SmartTablet™. Contractor will provide pickup and delivery of malfunctioning and replacement SmartTablets™ at no charge to the County.

k. Damage (SmartTablets™)

      i. The tablets provided are ruggedized for use in a correctional setting. However, if an inmate causes intentional damage requiring the device to be repaired, County will be required to fill out a damage report form. Provider will seek restitution from the inmate with the assistance of the County. During the term of the contract, should the number of intentionally damaged tablets exceed twenty

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

percent (20%) of the original provided tablet inventory for a given twelve (12) month period, the facility will be responsible for the cost of the new replacement tablets.

## B. SmartVisit™ Video Visitation System

1) Provider will provide, at no cost to County, a fully functional video visitation system (SmartVisit™) within the Maguire Correctional Facility and the Maple Street Correctional Center, to be accessed at County's existing kiosks and on Provider's existing SmartTablet™ system. The SmartVisit™ video visitation system is available for onsite and remote visits. Provider is exclusively responsible for providing the operating systems, hardware, and application software for this system, and all networking requirements needed for operation of the system. Provider shall be entitled to all revenue derived from the video visitation system.

2) Provider will make the following previously installed kiosks available for video visitation:
   a. Forty-seven (47) lobby kiosks at the Maple Street Correctional Center
   b. Fifty-six (56) inmate-accessible kiosks located at Maple Street Correctional Center
   c. Fifty-four (54) inmate-accessible kiosks at Maguire Correctional Facility

*Provider will work with County to ensure kiosks are installed and operational at the agreed upon locations.*

3) For existing kiosks supplied by a previous vendor which Provider has utilized at County's request and supported to date, Provider will continue to provide support and maintenance to the extent practicable at no cost to County. However, if such kiosks require replacement parts that are no longer readily obtainable due to obsoletion, lack of availability, or otherwise, Provider shall replace such kiosks with its own equipment.

4) Provider is responsible for all the costs and future costs associated with any modification, reconfiguration, or upgrade of the video visitation system at County's Facility. These costs do not include the costs of the actual electrical power.

5) Provider will provide County with the capability of monitoring the video visitations, except those visitations deemed to be privileged under law between attorney and client. Provider will maintain a record of all parties of the video visitation system for a period of seven (7) years from the time of the visitation.

6) Friends and Family can access and purchase and schedule the video visitation sessions via the Smartjailmail.com website.

7) Provider will allow each inmate at County's Facility two (2) free video visitation calls per week up to forty-five (45) minutes in length, to satisfy the needs of indigent inmates.

8) Provider shall charge fees for video visitation in the amounts as set forth below, subject to change by mutual agreement of the parties:

| SmartVisit™ VVS Service Rates | | |
|---|---|---|
| Visitation Type | Per Visit Charge | Per Minute Rate |
| Local (On-Site) | N/A | No charge |
| Remote (Off-Site) Scheduled | N/A | $0.05 |
| Remote (Off-Site) On Demand | N/A | $0.05 |

9) Remote video visitation will be made available to inmates 7 days a week, in keeping with the same hours and time availability of the inmate phone system.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

## C. SmartInmate™ Electronic Messaging

1) Provider will provide, at no cost to County, a fully functional electronic messaging system (SmartInmate™), within the Maguire Correctional Facility and the Maple Street Correctional Center. Provider is responsible for providing and installing all of the hardware, software including the operating systems and application software, and all networking requirements needed for the operation, maintenance, and networking of the electronic messaging system. Provider shall be exclusively entitled to all revenue derived from electronic messaging and photo delivery.

2) Provider is responsible for all future costs associated with any modification, reconfiguration, or upgrade of the electronic messaging system within the County's correctional facilities. These costs do not include the costs of the actual electrical power.

3) Provider will provide each inmate in County's correctional facilities with credits for two (2) messages per week at no charge, to satisfy the needs of indigent inmates.

4) Provider shall charge fees for electronic messaging services in the amounts as set forth below, subject to change by mutual agreement of the parties:

| SmartInmate™ Electronic Messaging Service Rates | |
| --- | --- |
| Message Type | Rate |
| Text (up to 30,000 characters) | $0.50 per message |
| Photo Delivery | $1.00 per photo |

5) County shall have the capability of monitoring and reviewing all electronic messages and attachments sent through the electronic messaging system, except those messages deemed to be privileged under law between attorney and client. Further, Provider will maintain a record of all electronic messages sent through the electronic messaging system for a period of seven (7) years from the time the message is sent.

6) Friends and family will have the ability to access the electronic messaging and photo delivery system via the SmartInmate.com website.

7) Electronic Messaging Fees. Each email message will be billed at fifty cents ($0.50), which corresponds to 50 credits.

8) Photo Delivery Service. Each approved photo will be billed at one dollar ($1.00), which corresponds to 100 credits.

9) County's Responsibilities (SmartInmate™ Electronic Messaging)

    a. County will provide the Provider with access to the County correctional facilities and space within the facilities, subject to operational security requirements, for Provider to install, network, and maintain the electronic messaging system. Emergency access to the system will be granted as needed Monday through Friday 8:00 am to 4:00 pm. Non-emergency access will be granted within twenty-four (24) hours of notice by Provider.

    b. County will include information regarding the SmartInmate™ messaging system in the County's Inmate Handbook and in all other areas where information on the Inmate Telephone System is located.

    c. County will provide information regarding the SmartInmate™ messaging system in at least one location next to the inmate mailing address on County's website, with a link to the SmartInmate.com website.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

    d.   Upon completion of installation and appropriate system testing, County will allow the electronic messaging to go live within forty-eight (48) hours' notice of system availability.

    e.   County will provide an electronic list twice each day of all inmates residing in the County's correctional facilities and their current housing assignments. Provider will use this listing to ensure that each inmate is authorized to use only those kiosks and tablets appropriate to their housing assignment.

    f.   County will give prompt notice, in writing, to Provider of any trouble or irregularity in the functioning of the electronic messaging system as a whole.

## D. Patented MailGuard® Postal Mail Elimination* System

1) Provider shall provide its patented MailGuard® Postal Mail Elimination system at no cost to County. Provider's MailGuard® service converts regular incoming postal mail into an electronic document that is delivered to the inmate recipient via the SmartTablets™ or SmartKiosk™ within the County's correctional facilities.

2) Provider shall provide all the equipment and support services to operate the MailGuard® system and transmit incoming routine postal mail into an electronic document to be delivered to the inmate on the SmartTablets™ or SmartKiosk™ at no cost to County.

3) For purposes of this agreement, "routine mail" means all regular incoming correspondence between inmates, family, and friends and excludes all legal mail, packages, books, magazines, periodicals and religious mail. All legal mail, packages, books, magazines, or other non-routine inmate mail will still be sent to County's Facility for delivery.

4) MailGuard® will only integrate with and transmit incoming routine mail to the SmartTablets™ or SmartKiosk™.

5) Provider is responsible for all the future costs associated with any modification, reconfiguration, or upgrade of the MailGuard® system at the County correctional facilities. These costs do not include the costs of the actual electrical power.

6) MailGuard® shall become the Inmates' designated Agent to process and electronically deliver incoming routine inmate mail pursuant to County's mail policy which shall promote the intent of this Agreement.

7) County will instruct and publish on its website that all incoming routine mail must be sent to the designated Post Office Box for electronic delivery via the MailGuard® system.

8) Provider shall be solely responsible for the cost of maintaining the Post Office Box designated by the County for incoming routine mail to be sent.

9) Provider will retrieve incoming routine mail from the designated Post Office Box and process and transmit that mail in an expeditious manner.

10) Provider will shred all processed mail after 30 days unless the County requests in writing to Provider that all of a particular inmate's mail must be stored.

11) The MailGuard® public website will allow inmates to log into their account and retrieve electronic copies of their processed incoming routine mail for thirty (30) days from the date of their release from the County's Facility.

12) Provider will maintain electronic records for a period of seven (7) years from the date of the inmate's release from the County's Facility. During the term of this Agreement and upon request,

---

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

we will provide County with electronic copies of the requested record for the purpose of inspecting, examining, and auditing the Provider's records directly relevant to County's Facility.

13) MailGuard® will provide County with the capability of monitoring and reviewing all electronic mail sent through the MailGuard® system, except those messages deemed to be privileged under law between attorney and client.

14) **County's Responsibilities (MailGuard®)**

   a. County shall be responsible for informing inmates and inmates' friends and family that all routine correspondence must be sent to the designated MailGuard® Post Office Box. County will include information regarding the MailGuard® system in the Inmate Handbook and in all other areas where information regarding the Inmate Mail Policy and Procedures are located.

   b. County will provide information regarding County's incoming postal mail policy, the MailGuard® system and the MailGuard® procedure for processing and/or disposing of all incoming mail and pictures in at least one location next to the inmate mailing address on the County's website and very clearly state that all incoming routine mail MUST be mailed to the MailGuard® designated Post Office Box.

   c. County will instruct on its website that all incoming routine mail must be sent to the designated Post Office Box for electronic delivery via the MailGuard® system and display information regarding the County's incoming postal mail policy, the MailGuard® system and the MailGuard® procedure for processing and/or disposing of all incoming mail and pictures.

   d. Should the County receive incoming routine mail instead of the designated Post Office Box, the County will be responsible for the delivery of said mail to MailGuard® for processing.

   e. Upon completion of installation and appropriate system testing, County will allow the MailGuard® system to go live within forty-eight (48) hours' notice of system availability.

   f. County will provide a list electronically twice each day of all inmates residing in the County Jail Facilities and their current housing assignments.

   g. County will give prompt notice in writing to Provider of any trouble or irregularity in the functioning of the MailGuard® system.

## E. Patented MailGuard Legal™ System

1) Provider is the exclusive licensee of MailGuard Legal™, the patented postal mail elimination system for legal mail.

2) Provider will provide, install, and maintain its patented MailGuard Legal™ Mail system, which will include a sufficient number of MailGuard Legal™ Mail Scanning Carts to handle the volume of legally privileged mail or other mail deemed to be legal mail (the "Legal Mail") to be processed by the Facility.

3) County acknowledges and agrees that Legal Mail must be opened in the presence of the inmate.

4) Provider will install and maintain its proprietary software and the additional infrastructure necessary to operate its patented MailGuard Legal™ system, at no cost to County.

5) The Legal Mail may be scanned in the presence of the inmate for electronic delivery to the inmate or printed to hard copy for physical delivery to the inmate, in accordance with Provider's patented

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

MailGuard Legal™ system.

6) County understands and agrees that the MailGuard Legal™ system does not allow for any electronic copies of Legal Mail to be monitored, reviewed, or investigated.

7) County agrees to adhere to all applicable laws in order to maintain the privileged nature of privileged communications while using or supervising the inmates' use of Provider's patented MailGuard Legal™ Mail system.

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

**Exhibit B - Rates & Fees**

1. **Rates.**
   A. SmartEntertainment™ Streaming Media Platform Rates.

   | SmartEntertainment™ Streaming Media Platform Rates | |
   |---|---|
   | **Entertainment Category** | **Rate** |
   | Basic Content | No Charge |
   | Premium Content | $0.01 per minute |

   B. SmartVisit™ Video Visitation Rates. Provider will provide every inmate with two onsite video visits per week at no cost. A week begins on Sunday at 12:00 a.m. and ends on Saturday at 11:59 p.m. Onsite visits will occur in the lobby of the Maple Street Correctional Center. Inmates will be allowed access to additional video visits during their recreation time at the discretion of staff at a cost of $0.05 per minute.

   | SmartVisit™ VVS Service Rates | | |
   |---|---|---|
   | **Visitation Type** | **Per Visit Charge** | **Per Minute Rate** |
   | Local (On-Site) | N/A | No charge |
   | Remote (Off-Site) Scheduled | N/A | $0.05 |
   | Remote (Off-Site) On Demand | N/A | $0.05 |

   C. SmartInmate™ Electronic Messaging Service Rates. Provider will provide every inmate with two (2) SmartInmate™ Electronic Messages per week at no cost. A week begins on Sunday at 12:00 a.m. and ends on Saturday at 11:59 p.m.

   | SmartInmate™ Electronic Messaging Service Rates | |
   |---|---|
   | **Message Type** | **Rate** |
   | Text (up to 30,000 characters) | $0.50 per message |
   | Photo Delivery | $1.00 per photo |

2. The following parties shall not be charged any fees for video visits:
   1. Deputy District Attorneys and District Attorney Inspectors
   2. Defense attorneys and their investigators
   3. Correctional Health and Forensic Mental Health staff
   4. Service League of San Mateo County employees
   5. Religious Counselors
   6. Sheriff's Office Program Service Employees
   7. Choices Program staff
   8. Law Enforcement personnel
   9. Rape Trauma Services counselors
   10. Judges, court clerks, and support personnel
   11. Other service providers approved by the Sherriff's Office Classification Unit

DocuSign Envelope ID: D349515B-3380-4434-8165-6A570424DAA6

# ATTACHMENT I
## Assurance of Compliance with Section 504 of the Rehabilitation Act of 1973, as Amended

The undersigned (hereinafter called "Contractor(s)") hereby agrees that it will comply with Section 504 of the Rehabilitation Act of 1973, as amended, all requirements imposed by the applicable DHHS regulation, and all guidelines and interpretations issued pursuant thereto.

The Contractor(s) gives/give this assurance in consideration of for the purpose of obtaining contracts after the date of this assurance. The Contractor(s) recognizes/recognize and agrees/agree that contracts will be extended in reliance on the representations and agreements made in this assurance. This assurance is binding on the Contractor(s), its successors, transferees, and assignees, and the person or persons whose signatures appear below are authorized to sign this assurance on behalf of the Contractor(s).

The Contractor(s): (Check a or b)

☐   a. Employs fewer than 15 persons.

☒   b. Employs 15 or more persons and, pursuant to section 84.7 (a) of the regulation (45 C.F.R. 84.7 (a), has designated the following person(s) to coordinate its efforts to comply with the DHHS regulation.

| | |
|---|---|
| Name of 504 Person: | Lisa Eddy |
| Name of Contractor(s): | Smart Communications Holding, Inc. |
| Street Address or P.O. Box: | 10491 72nd Street |
| City, State, Zip Code: | Seminole, FL 33777 |

I certify that the above information is complete and correct to the best of my knowledge

| | |
|---|---|
| Signature: | DocuSigned by: [signature] E0884FD8EA1484... |
| Title of Authorized Official: | CEO |
| Date: | 8/23/2021 | 4:25 PM EDT |

*Exception: DHHS regulations state that: "If a recipient with fewer than 15 employees finds that, after consultation with a disabled person seeking its services, there is no method of complying with (the facility accessibility regulations) other than making a significant alteration in its existing facilities, the recipient may, as an alternative, refer the handicapped person to other providers of those services that are accessible."

# Terms of Service

**Revised: January 30, 2016**

Welcome to SmartJailMail.com, a convenient way for inmates to communicate with their friends and family. This service is operated by Smart Communications Holdings, Inc. and its affiliated companies and referred to as SmartJailMail.com. By using the SmartJailMail.com Website, (the "Website") you agree to be bound by these Terms of Service (this "Agreement"), whether or not you register as a user of SmartJailMail.com ("Member"). If you wish to become a Member and make use of the SmartJailMail.com service (the "Service"), please read these Terms of Service. If you object to anything in this Agreement or the SmartJailMail.com Privacy Policy, do not use the Website or the Service. The Terms of Service are subject to change by SmartJailMail.com at any time, effective upon posting on the SmartJailMail.com website, and your use of the Service after such posting will constitute acceptance by you of such changes.

1. **Acceptance of Terms of Service Agreement**

   a. **Electronic Agreement** - This Agreement is an electronic contract that sets out the legally binding terms of your use of the Website and your membership in the Service. This Agreement may be modified by SmartJailMail.com from time to time, such modifications to be effective upon posting by SmartJailMail.com on the Website. This Agreement includes SmartJailMail.com's Acceptable Use Policy for Content Posted on the Website, SmartJailMail.com's Privacy Policy, SmartJailMail.com's subscription policies and any notices regarding the Website. By accessing the Website or becoming a Member, you accept this Agreement and agree to the terms, conditions and notices contained or referenced herein.

   b. **Electronic Form** - By accessing the Website or becoming a Member, you consent to have this Agreement provided to you in electronic form.

   c. **Non-electronic Copy** - You have the right to receive this Agreement in non-electronic form. You may request a non-electronic copy of this Agreement either before or after you electronically sign the Agreement. To receive a non-electronic copy of this Agreement, please send an e-mail to support@SmartJailMail.com or a letter and self-addressed stamped envelope to: SmartJailMail.com, 4522 W North B St, Tampa, FL 33609.

   d. **Withdrawing Your Consent** - You have the right at any time to withdraw your consent to have this Agreement provided to you in electronic form.

      i. **Effect** - Should you choose to withdraw your consent to have this Agreement provided to you in electronic form, we will discontinue your then-current username and password. This means that you will not have the right to use the Service unless, and until, we issue you a new username and password. We only will issue you a new username and password after we receive a signed copy of a non-electronic version of this Agreement, which we will send to you upon request.

      ii. **Notice** - To withdraw your consent and/or request a non-electronic copy of this Agreement, please send an email to support@SmartJailMail.com or a letter and self-addressed stamped

envelope to: SmartJailMail.com, 4522 W North B St, Tampa, FL 33609.

    iii. **Prospective Nature** - Your withdrawal of consent shall be effective within a reasonable time after we receive your withdrawal notice described above. Your withdrawal of consent will not affect the legal validity or enforceability of the Agreement provided to, and electronically signed by, you prior to the effective date of your withdrawal.

  e. **Access and Retention** - In order to access and retain this electronic Agreement, you must have access to the World Wide Web, either directly or through devices that access web-based content, and pay any service fees associated with such access. In addition, you must use all equipment necessary to make such connection to the World Wide Web, including a computer and modem or other access device. Please print a copy of this document for your records. To retain an electronic copy of this Agreement, you may save it into any word processing program. Via, the Website, we will notify you of any changes in the hardware or software requirements needed to access and/or retain this Agreement that create a material risk that you will not be able to continue to access and/or retain this electronic Agreement.

2. **Eligibility** - You must be at least eighteen (18) years of age to register as a Member of SmartJailMail.com. Membership in the Service is void where prohibited. By using the Website, you represent and warrant that you have the right, authority and capacity to enter into this Agreement and to abide by all of the terms and conditions of this Agreement. Those under the age of 18 may use the Website under the authorization and supervision of a registered Member.

3. **Membership and Subscription; Pricing** - You may become a Member of the Service at no cost. As a Member, you will have the ability to participate in some, but not all, of the features and services available within the Service. In order to access additional features and services, including the ability to communicate with other Members, you must become a paying subscriber to the Service. Please note that the subscription policies that are disclosed to you in subscribing to the service are deemed part of this Agreement. Please see Billing Details for a description of such policies. For purposes of this Agreement the term "Member" includes subscribers, unless where its usage indicates otherwise. From time to time, SmartJailMail.com may remove the accounts of non-subscribers.

4. **Term** - This Agreement will remain in full force and effect while you use the Website and/or are a Member. You may terminate your membership and/or subscription at any time, for any reason, by following the instructions in Account Settings, or by sending SmartJailMail.com written notice of termination to SmartJailMail.com, 4522 W North B St, Tampa, FL 33609 or email notice of termination to support@SmartJailMail.com. If you resign or cancel your membership and/or subscription via the SmartJailMail.com site, to help SmartJailMail.com analyze and improve the Service, you may be asked to provide a reason for your resignation/cancellation. You may bypass this brief resignation survey page and continue the resignation/cancellation process by clicking the "Continue Cancellation" or other similar button on the page. SmartJailMail.com may terminate your membership and/or subscription by sending notice to you at the email address you provide in your application for membership, or such other email address as you may later provide to SmartJailMail.com. If SmartJailMail.com terminates your membership in the Service because you have breached this Agreement, you will not be entitled to any refund of unused subscription fees. All decisions regarding the termination of accounts shall be made in the sole discretion of SmartJailMail.com. SmartJailMail.com is not required to provide you notice prior to terminating your membership and/or subscription. SmartJailMail.com is not required, and may be

prohibited, from disclosing a reason for the termination of your account. Even after your membership or subscription is terminated, this Agreement will remain in effect. All terms that by their nature may survive termination of this Agreement shall be deemed to survive such termination.

5. **Non-commercial Use by Members** - The Website is for the personal use of individual Members only and may not be used in connection with any commercial endeavors that have not been approved by SmartJailMail.com in advance in writing. Organizations, companies, and/or businesses may not become Members and should not use the Service or the Website for any purpose. Illegal and/or unauthorized uses of the Website, including collecting usernames and/or email addresses of members by electronic or other means for the purpose of sending unsolicited email and unauthorized framing of or linking to the Website may be investigated, and appropriate legal action will be taken, including without limitation, civil, criminal, and injunctive redress. Use of the Website is with the permission of SmartJailMail.com, which may be revoked at any time, for any reason, in SmartJailMail.com's sole discretion.

6. **Account Security** - You are responsible for maintaining the confidentiality of the username and password that you designate during the Registration process, and you are fully responsible for all activities that occur under your username and password. You agree to (a) immediately notify SmartJailMail.com of any unauthorized use of your username or password or any other breach of security, and (b) ensure that you exit from your account at the end of each session. SmartJailMail.com will not be liable for any loss or damage arising from your failure to comply with this provision. You should use particular caution when accessing your account from a public or shared computer so that others are not able to view or record your password or other personal information.

7. **Your Interactions with Other Members** - You are solely responsible for your interactions with other Members. You understand that SmartJailMail.com does not in any way screen its Members, nor does SmartJailMail.com inquire into the backgrounds of its Members or attempt to verify the statements of its Members. SmartJailMail.com makes no representations or warranties as to the conduct of Members. In no event shall SmartJailMail.com be liable for any damages whatsoever, whether direct, indirect, general, special, compensatory, consequential, and/or incidental, arising out of or relating to the conduct of you or anyone else in connection with the use of the Service, including without limitation, bodily injury, emotional distress, and/or any other damages resulting from communications with other registered users of this Service or persons you meet through this Service. You agree to take reasonable precautions in all interactions with other Members of the Service. You should not provide your financial information (for example, your credit card or bank account information) to other Members.

8. **Content on SmartJailMail.com**

    a. **Proprietary Rights** - SmartJailMail.com owns and retains license to all proprietary rights in the Website and the Service. The Website contains the copyrighted material, trademarks, and other proprietary information of SmartJailMail.com, and its licensors. Except for that information which is in the public domain or for which you have been given written permission, you may not copy, modify, publish, transmit, distribute, perform, display, or sell any such proprietary information.

9. **Content Posted by You on SmartJailMail.com**

    a. You are solely responsible for the Content that you publish or display (hereinafter, "post") on the Service, or transmit to other Members. You will not post on the Service, or transmit to other

Members, any defamatory, inaccurate, abusive, obscene, profane, offensive, sexually oriented, threatening, harassing, racially offensive, or illegal material, or any material that infringes or violates another party's rights (including, but not limited to, intellectual property rights, and rights of privacy and publicity). You will not provide inaccurate, misleading or false information to the Company or to any other Member. If information provided to SmartJailMail.com, or another Member, subsequently becomes inaccurate, misleading or false, you will promptly notify SmartJailMail.com of such change.

b. You understand and agree that SmartJailMail.com or the correctional facility where inmates are housed may review and delete any content, messages, or photos (collectively, "Content"), in each case in whole or in part, that in the sole judgment of SmartJailMail.com or the correctional facility violate this Agreement or which might be offensive, illegal, or that might violate the rights, harm, or threaten the safety of Members.

c. By posting Content to SmartJailMail.com, you automatically grant, and you represent and warrant that you have the right to grant, to SmartJailMail.com, its affiliates, licensees and successors, an irrevocable, perpetual, non-exclusive, fully paid, worldwide license to use, copy, perform, display, reproduce, adapt, modify and distribute such information and content and to prepare derivative works of, or incorporate into other works, such information and content, and to grant and authorize sublicenses of the foregoing. You further represent and warrant that public posting and use of your content by SmartJailMail.com will not infringe or violate the rights of any third party.

d. The following is a partial list of the kind of Content that is illegal or prohibited on the Website. SmartJailMail.com reserves the right to investigate and take appropriate legal action in its sole discretion against anyone who violates this provision, including without limitation, removing the offending communication from the Service and terminating the membership of such violators. It includes, but is not limited to, Content that:

- is patently offensive to the online community, such as Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual;

- harasses or advocates harassment of another person;

- involves the transmission of "junk mail", "chain letters," or unsolicited mass mailing or "spamming";

- promotes information that you know is false, misleading or promotes illegal activities or conduct that is abusive, threatening, obscene, defamatory or libelous;

- promotes an illegal or unauthorized copy of another person's copyrighted work, such as providing pirated computer programs or links to them, providing information to circumvent manufacture-installed copy-protect devices, or providing pirated images, audio or video, or links to pirated images, audio or video files;

- contains restricted or password only access pages, or hidden pages or images (those not linked to or from another accessible page);

- provides material that exploits people under the age of 18 in a sexual or violent manner, or

      solicits personal information from anyone under the age of 18;

- provides instructional information about illegal activities such as making or buying illegal weapons, violating someone's privacy, or providing or creating computer viruses;

- solicits passwords or personal identifying information for commercial or unlawful purposes from other users; and

- engages in commercial activities and/or sales without our prior written consent such as contests, sweepstakes, barter, advertising, and pyramid schemes.

    e.  Your use of the Service, including but not limited to the Content you post on the Service, must be in accordance with any and all applicable laws and regulations.

    f.  You may not engage in advertising to, or solicitation of, other Members. This includes but is not limited to solicitation or advertising to buy or sell any products or services through the Service or networking for commercial purposes. You may not transmit any chain letters or junk email to other Members. It is a violation of these rules to use any information obtained from the Service in order to harass, abuse, or harm another person, or in order to contact, advertise to, solicit, or sell to any Member without our prior explicit consent. In order to protect our Members from such advertising or solicitation, we reserve the right to restrict the number of emails which a Member may send to other Members in any 24-hour period to a number which we deem appropriate in our sole discretion.

    g.  All information you include in your Member profile must be accurate, current and complete.

10. **Prohibited Activities** - SmartJailMail.com reserves the right to investigate and terminate your membership if you have misused the Service, or behaved in a way which could be regarded as inappropriate or whose conduct is unlawful or illegal. The following is a partial list of the type of actions that you may not engage in with respect to the Service:

- You will not use the Service to provide legal services, legal advice, or in an official capacity as an attorney or bondsperson, or to send any communications that should be deemed private, privileged, or confidential unless a specific agreement to do so has been established between You and SmartJailMail.com.

- You will not copy and paste or otherwise pass messages between or act as a corrier between inmates. Inmates will not ask other users to pass messages to another inmate.

- You will not impersonate any person or entity.

- You will not "stalk" or otherwise harass any person.

- You will not express or imply that any statements you make are endorsed by SmartJailMail.com without our specific prior written consent.

- You will not use any robot, spider, site search/retrieval application, or other manual or automatic device or process to retrieve, index, "data mine", or in any way reproduce or circumvent the navigational structure or presentation of the Service or its contents.

- You will not post, distribute or reproduce in any way any copyrighted material, trademarks, or other proprietary information without obtaining the prior consent of the owner of such proprietary rights.

- You will not remove any copyright, trademark or other proprietary rights notices contained in the Service.

- You will not interfere with or disrupt the Services or the site or the servers or networks connected to the Services or the site.

- You will not post, email or otherwise transmit any material that contains software viruses or any other computer code, files or programs designed to interrupt, destroy or limit the functionality of any computer software or hardware or telecommunications equipment.

- You will not forge headers or otherwise manipulate identifiers in order to disguise the origin of any information transmitted through the Service.

- You will not "frame" or "mirror" any part of the Service or the Website, without SmartJailMail.com's prior written authorization. You also shall not use meta tags or code or other devices containing any reference to SmartJailMail.com or the Service or the site in order to direct any person to any other web site for any purpose.

- You will not modify, adapt, sublicense, translate, sell, reverse engineer, decipher, decompile or otherwise disassemble any portion of the Service or the Website or any software used on or for the Service or cause others to do so.

11. **Customer Service** - SmartJailMail.com provides assistance and guidance through its customer care representatives. When communicating with our customer care representatives, you may not to be abusive, obscene, profane, offensive, sexist, threatening, harassing, racially offensive, or otherwise behave inappropriately. If we feel that your behavior towards any of our customer care representatives or other employees is at any time threatening or offensive, we reserve the right to immediately terminate your membership and you will not be entitled to any refund of unused subscription fees.

12. **Subscriptions; Charges on Your Billing Account**

    a. **General** - SmartJailMail.com bills you through an online account (your "Billing Account") for use of the Service. You agree to pay SmartJailMail.com all charges at the prices then in effect for any use of the Service by you or other persons (including your agents) using your Billing Account, and you authorize SmartJailMail.com to charge your chosen payment provider (your "Payment Method") for the Service. You agree to make payment using that selected Payment Method. SmartJailMail.com reserves the right to correct any errors or mistakes that it makes even if it has already requested or received payment.

    b. **Recurring Billing** - SmartJailMail.com does not make use of recurring billing. Each charge is authorized at the point of purchase.

    c. **Current Information Required** - YOU MUST PROVIDE CURRENT, COMPLETE AND ACCURATE INFORMATION FOR YOUR BILLING ACCOUNT. YOU MUST PROMPTLY UPDATE ALL INFORMATION TO KEEP YOUR BILLING ACCOUNT CURRENT, COMPLETE AND ACCURATE (SUCH AS A CHANGE IN BILLING ADDRESS, CREDIT CARD NUMBER, OR CREDIT CARD

EXPIRATION DATE), AND YOU MUST PROMPTLY NOTIFY SmartJailMail.com IF YOUR PAYMENT METHOD IS CANCELED (E.G., FOR LOSS OR THEFT) OR IF YOU BECOME AWARE OF A POTENTIAL BREACH OF SECURITY, SUCH AS THE UNAUTHORIZED DISCLOSURE OR USE OF YOUR USER NAME OR PASSWORD. CHANGES TO SUCH INFORMATION CAN BE MADE AT ACCOUNT SETTINGS.

d. **Payment Method** - The terms of your payment will be based on your Payment Method and may be determined by agreements between you and the financial institution, credit card issuer or other provider of your chosen Payment Method (the "Payment Method Provider"). If SmartJailMail.com does not receive payment from your Payment Method Provider, you agree to pay all amounts due on your Billing Account upon demand.

e. **Reaffirmation of Authorization** - Your non-termination or continued use of the Service reaffirms that SmartJailMail.com is authorized to charge your Payment Method. SmartJailMail.com may submit those charges for payment and you will be responsible for such charges. This does not waive SmartJailMail.com's right to seek payment directly from you. Your charges may be payable in advance, in arrears, per usage, or as otherwise described when you initially subscribed to the Service.

f. **No Refunds** - SmartJailMail.com will not issue refunds on any portion of fees charged or services that you later decide not to use.

g. **Liability** - In some situations a correctional facility may refuse to deliver a message or attachment to an inmate. In these situations, regardless of the reason for refusal, neither the correctional facility nor SmartJailMail.com shall be liable to you for the cost of credits used to send the message and/or attachment. If an inmate is relocated, transferred, discharged, placed in confinement, has their account disabled, or otherwise is temporarily or permanently no longer able to use the Service for any reason, neither the correctional facility nor SmartJailMail.com shall be liable to you for the cost of credits used to send unread messages and/or attachments, nor for unused credits remaining on your account or unused credits that have been transferred to the inmate's account.

13. **Modifications to Service** - SmartJailMail.com reserves the right at any time to modify or discontinue, temporarily or permanently, the Service (or any part thereof) with or without notice. You agree that SmartJailMail.com shall not be liable to you or to any third party for any modification, suspension or discontinuance of the Service.

14. **Blocking of IP Addresses** - In order to protect the integrity of the Service, SmartJailMail.com reserves the right at any time in its sole discretion to block Members from certain IP addresses from accessing the Website.

15. **Copyright Policy** - You may not post, distribute, or reproduce in any way any copyrighted material, trademarks, or other proprietary information without obtaining the prior written consent of the owner of such proprietary rights. Without limiting the foregoing, if you believe that your work has been copied and posted on the Service in a way that constitutes copyright infringement, please provide our Copyright Agent with the following information: an electronic or physical signature of the person authorized to act on behalf of the owner of the copyright interest; a description of the copyrighted work that you claim has

been infringed; a description of where the material that you claim is infringing is located on the Website; your address, telephone number, and email address; a written statement by you that you have a good faith belief that the disputed use is not authorized by the copyright owner, its agent, or the law; a statement by you, made under penalty of perjury, that the above information in your notice is accurate and that you are the copyright owner or authorized to act on the copyright owner's behalf. SmartJailMail.com's Copyright Agent for notice of claims of copyright infringement can be reached as follows: SmartJailMail.com Legal, 4522 W North B St, Tampa, FL 33609.

16. **Member Disputes -** You are solely responsible for your interactions with other SmartJailMail.com Members. SmartJailMail.com reserves the right, but has no obligation, to monitor disputes between you and other Members.

17. **Privacy -** Use of the Website and/or the Service should not be considered private. Messages between Members may be monitored by SmartJailMail.com or the correctional facility that houses inmates. Use of the Service is Governed by our Privacy Policy.

18. **Disclaimers -** SmartJailMail.com is not responsible for any incorrect or inaccurate Content posted on the Website or in connection with the Service, whether caused by users of the Website, Members or by any of the equipment or programming associated with or utilized in the Service. SmartJailMail.com is not responsible for the conduct, whether online or offline, of any user of the Website or Member of the Service. SmartJailMail.com assumes no responsibility for any error, omission, interruption, deletion, defect, delay in operation or transmission, communications line failure, theft or destruction or unauthorized access to, or alteration of, user or Member communications. SmartJailMail.com is not responsible for any problems or technical malfunction of any telephone network or lines, computer online systems, servers or providers, computer equipment, software, failure of email or players on account of technical problems or traffic congestion on the Internet or at any Website or combination thereof, including injury or damage to users and/or Members or to any other person's computer related to or resulting from participating or downloading materials in connection with the Web and/or in connection with the Service. Under no circumstances will SmartJailMail.com or any of its affiliates, advertisers, promoters or distribution partners be responsible for any loss or damage, including personal injury or death, resulting from anyone's use of the Website or the Service, any Content posted on the Website or transmitted to Members, or any interactions between users of the Website, whether online or offline. The Website and the Service are provided "AS-IS" and SmartJailMail.com expressly disclaims any warranty of fitness for a particular purpose or non-infringement. SmartJailMail.com cannot guarantee and does not promise any specific results from use of the Website and/or the Service.

19. **Links -** The Service may provide, or third parties may provide, links to other World Wide Web sites or resources. Because SmartJailMail.com has no control over such sites and resources, you acknowledge and agree that SmartJailMail.com is not responsible for the availability of such external sites or resources, and does not endorse and is not responsible or liable for any Content, advertising, products or other materials on or available from such sites or resources. You further acknowledge and agree that SmartJailMail.com shall not be responsible or liable, directly or indirectly, for any damage or loss caused or alleged to be caused by or in connection with the use of, or reliance upon, any such Content, goods or services available on or through any such site or resource.

20. **Limitation on Liability -** Except in jurisdictions where such provisions are restricted, in no event will SmartJailMail.com be liable to you or any third person for any indirect, consequential, exemplary,

incidental, special or punitive damages, including also lost profits arising from your use of the Web site or the Service, even if SmartJailMail.com has been advised of the possibility of such damages. Notwithstanding anything to the contrary contained herein, SmartJailMail.com's liability to you for any cause whatsoever, and regardless of the form of the action, will at all times be limited to the amount paid, if any, by you to SmartJailMail.com for the Service during the term of membership.

21. **U.S. Export Controls** - Software from this Website (the "Software") is further subject to United States export controls. No Software may be downloaded from the Website or otherwise exported or re-exported (i) into (or to a national or resident of) Cuba, Iraq, Libya, North Korea, Iran, Syria, or any other Country to which the U.S. has embargoed goods; or (ii) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Commerce Department's Table of Deny Orders. By downloading or using the Software, you represent and warrant that you are not located in, under the control of, or a national or resident of any such country or on any such list.

22. **Jurisdiction and Choice of Law** - If there is any dispute arising out of the Website and/or the Service, by using the Website, you expressly agree that any such dispute shall be governed by the laws of the State of Florida, without regard to its conflict of law provisions, and you expressly agree and consent to the exclusive jurisdiction and venue of the state and federal courts of the State of Florida, in Manatee County, for the resolution of any such dispute.

23. **Indemnity by You** - You agree to indemnify and hold SmartJailMail.com, its subsidiaries, affiliates, officers, agents, and other partners and employees, harmless from any loss, liability, claim, or demand, including reasonable attorney's fees, made by any third party due to or arising out of your use of the Service in violation of this Agreement and/or arising from a breach of this Agreement and/or any breach of your representations and warranties set forth above.

24. **No Third Party Beneficiaries** - You agree that, except as otherwise expressly provided in this Agreement, there shall be no third party beneficiaries to this Agreement.

25. **Other** - This Agreement contains the entire agreement between you and SmartJailMail.com regarding the use of the Website and/or the Service. If any provision of this Agreement is held invalid, the remainder of this Agreement shall continue in full force and effect.

Please contact us with any questions regarding this agreement.

## Required Notifications

Some of the icons on this website are used under license from the following providers:

- Basic Icon Set 1 & 2 from Pixel Mixer (http://www.iconarchive.com/artist/pixelmixer.html)
- Finance Icon Set from VisualPharm (http://www.visualpharm.com/)

Copyright © 2022 by Smart Communications. All Rights Reserved.
Privacy Policy (/privacy-policy.cfm) - Terms of Service (/terms-of-service.cfm) - View in English (/terms-of-service.cfm?setLang=en) or Español (/terms-of-service.cfm?setLang=es)